UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KENNETH CRAWFORD,

                Plaintiff,

v.

HEIDI WASHINGTON,
MICHIGAN DEPARTMENT
OF CORRECTIONS, CRAIG
HUTCHINSON, QUALITY
CORRECTIONAL CARE OF
MICHIGAN and MICHIGAN
CORRECTIONS COMMISSION,

                Defendants.

_____/

Case No. 4:17-cv-11423

District Judge Linda V. Parker

Magistrate Judge Anthony P. Patti

**REPORT AND RECOMMENDATION REGARDING DEFENDANTS
MDOC AND WASHINGTON'S MOTION TO DISMISS AND/OR FOR
SUMMARY JUDGMENT (DE 22)**

I.    **RECOMMENDATION**:  The Court should grant Defendants MDOC and

Washington's motion to dismiss and/or for summary judgment.  (DE 22.)

II.    **REPORT:**

    A.    **Plaintiff's Complaint Names Five Defendants.**

    Kenneth Crawford is currently incarcerated at the Michigan Department of

Corrections (MDOC) Muskegon Correctional Facility (MCF).  (DE 10.)  On April

28, 2017, while incarcerated at the MDOC's Saginaw Correctional Facility (SRF),

Plaintiff filed the instant, verified civil rights complaint against five named

defendants:   **(1)** the MDOC, **(2)** MDOC Director Heidi Washington, **(3)** Craig Hutchinson, M.D., **(4)** Quality Correctional Care of Michigan, and **(5)** the Michigan Corrections Commission.   (DE 1 at 1-2.)   Plaintiff seeks both compensatory and punitive damages.  (DE 1 at 12.)

## B.    Four Defendants Have Appeared.

Defendants Quality Correctional Care of Michigan and Craig Hutchinson appeared via counsel on August 14, 2017.   (DEs 15-18; *see also* DE 20.) Defendants Washington and the MDOC appeared via counsel on August 28, 2017. (DE 21; *see also* DE 12-13.)  However, the U.S. Marshal's attempt at service upon Defendant Michigan Corrections Commission at MDOC Headquarters (P.O. Box 30003, Lansing, MI 48909) was returned unexecuted, as "[n]o one at th[e] address [wa]s authorized to accept service for this defendant."  (DEs 11, 14.)[1]

## C.    Two Defendants Have Filed a Dispositive Motion.

This case has been referred to me for pretrial matters.  Currently before the Court is Defendants MDOC and Washington's August 29, 2017 motion to dismiss and/or for summary judgment, which sets forth the following arguments:

I.    Crawford's claim(s) against MDOC are barred by Eleventh Amendment immunity.

---

[1] The Michigan corrections commission is discussed in Mich. Comp. Laws §§ 791.201, *et seq.*  (*See also* DE 1 at 10.)

II.  Summary judgment in Defendant Washington's favor is
     warranted because Crawford failed to properly exhaust his
     administrative remedies with respect to his claims against her.

III. Even if Crawford had exhausted his claims against Defendant
     Washington, his claim[s] must be dismissed under Fed. R. Civ.
     P. 12(b)(6).

(DE 22.)

Plaintiff's response was due on or before October 2, 2017.  (DE 23.)  He

timely filed a response on September 29, 2017.  (DE 24.)

### D.  The Court Should Grant Defendants MDOC and Washington's Motion to Dismiss and/or for Summary Judgment.

#### 1.  The factual allegations span the period from 2005 through May 2016.

The alleged facts underlying Plaintiff's complaint begin in 2005, at which

time "the MDOC medical provider was aware of his HCV [hepatitis C virus]

infection . . . [,]" but "simply withheld the information."  Plaintiff claims he was

informed that he had chronic HCV in 2010, "as a result of a test for diabetes[,]" but

"the progression of the disease was undetermined."  (DE 1 at 6.)

According to Plaintiff, a 2011 liver biopsy "significantly misrepresented"

Plaintiff's disease as having progressed to "Stage 2 of 4."  A subsequently test later

that year revealed that he was "already suffering from cirrhosis of the liver . . . [,]"

and his correct diagnosis was "Stage 4 of 4."  In 2011, both MDOC protocol and

the Centers for Disease Control (CDC) standard of care set "the proper treatment

for Stage 4 patients" as "a course of interferon, ribavirin and boceprevir or Tel[e]previr."  Plaintiff alleges that he was denied this treatment, due to, as the treating physician explained, "the selective process of the MDOC protocol . . . ."  Instead, Plaintiff claims that the MDOC placed him on "a regimen of monitoring for signs of liver disease progression . . . [,]" as if he "had not already achieved the penultimate stage, deferring only to death."  Then, during June 2013, Hutchinson "again declined to administer the then current standard of treatment . . . [,]" and stated that Plaintiff "'is best served awaiting treatment in the next six (6) to 12 months.'"  (DE 1 at 6.)

Plaintiff further contends that, during April 2014, Hutchinson admitted that the MDOC "had begun to utilize the newly sanctioned direct acting anti-viral agents (DAA) . . . ."  Still, "MDOC protocol required patients who still had preserved bone marrow reserve to deplete those reserves and suffer from ascites, bleeding esophageal var[ic]es or hepatic encephalopathy before even being considered for the new treatment, heralded as a CURE to HCV."  The delay in treatment "contravened the CDC's 2013 published statement that the standard of care in HCV treatment in the United States is treatment with DAA's for ALL hepatit[i]s C patients," not just those with "decompensated cirrhosis."  (DE 1 at 6.)

Finally, in May 2016, Plaintiff developed physical symptoms "severe enough to warrant treatment under MDOC policy."  However, by that time, his

condition "has deteriorated to such an extent that the overwhelming portion of potential benefit was completely lost." (DE 1 at 7.)

> **2.    Plaintiff's claims against Defendant MDOC are barred by the Eleventh Amendment / sovereign immunity.**

Although Plaintiff contends that Defendants are not entitled to immunity, Defendants MDOC and Washington are correct that Plaintiff's claims against the MDOC are barred by Eleventh Amendment. (DE 22 at 9-10, DE 24 at 1 ¶ 1.) The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States *by Citizens of another State*, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI (emphasis added). Moreover, "an unconsenting State is immune from suits brought in federal courts *by her own citizens* as well as by citizens of another State." *Employees of Dep't of Pub. Health & Welfare, Missouri v. Dep't of Pub. Health & Welfare, Missouri*, 411 U.S. 279, 280 (1973) (emphasis added).

"[S]uit against the State and its Board of Corrections is barred by the Eleventh Amendment, unless [the State] has consented to the filing of such a suit." *Alabama v. Pugh*, 438 U.S. 781, 782 (1978) (citing cases). *See also Abick v. State of Mich.*, 803 F.2d 874, 876 (6th Cir. 1986) (citing *Pennhurst State School & Hospital v. Halderman,* 465 U.S. 89, 97–98 (1984)) ("Michigan and its agency, the State Judicial Council, under the eleventh amendment, are immune from an action

for damages or injunctive relief in federal court.").  "Because the MDOC is a state agency and the state of Michigan has not consented to civil rights suits in the federal courts, the MDOC is entitled to Eleventh Amendment immunity."  *Sims v. Michigan Dep't of Corr.*, 23 F. App'x 214, 215 (6th Cir. 2001).  Here, Plaintiff seeks only monetary damages (compensatory and punitive) against Defendants in their personal and official capacities.  (DE 1 at 1, 12.)  Thus, dismissal of Plaintiff's claims against the MDOC is warranted.  *See also Taylor v. Michigan Dep't of Corr.*, No. 93-1016, 1993 WL 210884, *1 (6th Cir. June 16, 1993) ("Taylor's lawsuit against the MDOC for monetary damages is essentially a suit against the state of Michigan which is barred by the Eleventh Amendment, as the state has not consented to being sued.").

### 3.   Plaintiff's claims against Defendant Washington are unexhausted and/or fail to state a claim upon which relief can be granted.

Defendants MDOC and Washington argue that Washington is entitled to summary judgment, because:  **(a)** Plaintiff has not properly exhausted his administrative remedies with respect to his claims against her, and **(b)** his claims should be dismissed under Fed. R. Civ. P. 12(b)(6).  (DE 22 at 10-15).

### a.   Exhaustion

Under the PLRA, a prisoner may not bring an action "with respect to prison conditions under section 1983 of this title, or any other Federal law . . . until such

administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).

Congress enacted this provision to address the "outsized share" of prisoner

litigation filings and to ensure that "the flood of nonmeritorious claims does not

submerge and effectively preclude consideration of the allegations with merit."

*Jones v. Bock*, 549 U.S. 199, 203-04 (2007).  Put another way, the purpose of §

1997e(a) is to "reduce the quantity and improve the quality of prisoner suits."

*Porter v. Nussle*, 534 U.S. 516, 524-25 (2002).  In addition, exhaustion "gives an

agency an opportunity to correct its own mistakes with respect to the programs it

administers before it is haled into federal court, and it discourages disregard of [the

agency's] procedures."  *Woodford v. Ngo*, 548 U.S. 81, 89 (2006) (internal

quotations and citations omitted).

"There is no question that exhaustion is mandatory under the PLRA and that

unexhausted claims cannot be brought into court."  *Jones*, 549 U.S. at 211.  The

prison's grievance process determines when a prisoner has properly exhausted his

or her claim.  *Id.* at 219 ("The level of detail necessary in a grievance to comply

with the grievance procedures will vary from system to system, but it is the

prison's requirements, and not the PLRA, that define the boundaries of proper

exhaustion.").  Even where a prisoner has made some attempts to go through the

prison's grievance process, "[t]he plain language of the statute makes exhaustion a

precondition to filing an action in federal court."  *Freeman v. Francis*, 196 F.3d

641, 645 (6th Cir. 1999).  The prisoner "may not exhaust his [or her] administrative remedies during the pendency of the federal suit."  *Id.* (citations omitted); *see also Woodford*, 548 US at 95 ("A prisoner who does not want to participate in the prison grievance system will have little incentive to comply with the system's procedural rules unless noncompliance carries a sanction . . . .").

Since exhaustion is raised as a jurisdictional, affirmative defense, a Court necessarily addresses the merits of this issue pursuant to Rule 56 in the form of a summary judgment motion, looking to the administrative record to determine if there are material facts in dispute.  *Anderson v. Jutzy*, 175 F.Supp.3d 781, 788 (E.D. Mich. 2016).  Plaintiff here had the opportunity to point to any portion of the grievance record which would preclude summary judgment based on exhaustion, but he has failed to do so.

### i.    MDOC PD 03.02.130 ("Prisoner/Parolee Grievances")

The MDOC's procedure regarding prisoner/parolee grievances is set forth at MDOC PD 03.02.130.  (DE 22-2.)  It is a three-step process.  (*See* DE 22-2 ¶¶ V-GG.)  Significantly, the policy provides that "[c]omplaints filed by prisoners regarding grievable issues as defined in this policy serve to *exhaust* a prisoner's administrative remedies only when filed as a grievance through all three steps of the grievance process in compliance with this policy."  *Id*. ¶ B (emphasis added).

### ii.    Plaintiff's grievances

It seems that, from May 2009 to present, Plaintiff has filed three MDOC Grievances through Step III:

### (a)   RRF-2011-02-0183

On February 23, 2011, seemingly while incarcerated at Ryan Correctional Facility (RRF), Plaintiff completed a Step I MDOC Grievance Form which named "medical staff" or "Health-Care Person[ne]l-MDOC" and concerned the timing of his HCV diagnosis.  (DE 22-3 at 30.)   The response explained:  "Inmate wasn't diagnosed with Hep C until [December 8, 2010].  He had a positive test on [August 26, 2005].  Cirrhosis is not one of his diagnosed problems as of yet, but the doctor is ordering multiple tests to determine the proper course of treatment."  At Step II, Plaintiff sought to additionally grieve Kosarju-CMS and Jon Neumann, M.D.  It appears that Plaintiff attached a copy of a 2005 lab report to his Step II grievance appeal.  The report bears the names of "Kosaraju-CMS" and "Jon Neumann, MD[,]" and notes that Plaintiff tested positive in certain areas of his hepatitis panel. (*See* DE 22-3 at 28, 31-32.)  The Step II response is dated April 7, 2011, and the Step III response is dated June 23, 2011.  (DE 22-3 at 27-32.)

### (b)   MRF-2013-06-0641-27b

During June 2013, seemingly while incarcerated at Macomb Correctional Facility (MRF), Plaintiff completed a Step I grievance form.  The record of this grievance is difficult to read.  (DE 22-3 at 13.)  Nonetheless, the grievance was

rejected on the basis that it presented a non-grievable issue – "the content of policy or procedure . . . ." (*Id*. at 19.)  Plaintiff completed a Step II grievance appeal on June 13, 2013.  Although the appeal does mention Plaintiff's cirrhosis of the liver and Hepatitis, among other things, as well as "health service" and the "Warden's Forum," the gist of the grievance is an alleged "conflict" between MDOC PD 04.07.112, which concerns "Prisoner Personal Property," and MDOC PD 03.03.130(B)(4), which concerns "Lighting, ventilation, heating, and noise levels which are adequate for comfort."  Plaintiff expressly noted that returning the room fan "taken in violation of the humane treatment policy is the only way to resolve this g[ri]evance."  He suggested that it was directed against the MDOC for its "unreasonable interpretation" of its own policies, contends that prisoners are made to buy "an inadequate fan for the room temperature and ventilation / circulation[,]" and seems to complain about the untimely confiscation of fans at MRF.  (*Id*. at 11-12, 17-18.)  This appeal was denied.  (*Id*. at 11.)  Plaintiff composed a Step III appeal, to which he apparently attached healthcare documents related to "heat-related illness."  (*See* DE 22-3 at 23-26.)  The Step III grievance response is dated November 20, 2013.  (*Id*. at 10.)

### (c)     SRF-2016-07-1122-12D1

On July 11, 2016, seemingly while incarcerated at the Saginaw Correctional Facility (SRF), Plaintiff completed a Step I grievance form against "IDS

Hutchinson," allegedly contracted by Corizon Health, and "medical providers at Ryan and Macomb facilities . . .[,]" concerning when he was informed of and how he was treated for his cirrhosis of the liver / Hepatitis C.  The Step I grievance response is dated August 8, 2016, the Step II grievance response is dated September 16, 2016, and the Step III grievance response is dated October 19, 2016. (DE 22-3 at 5-9.)

### iii.    Summary

In a letter attached to his complaint, Plaintiff contends he has "completed exhausted all administrative remedies . . . ."  (DE 1 at 14.)  Still, Defendants MDOC and Washington have shown that "there is no genuine dispute as to any material fact . . ." on the issue of exhaustion.  Fed. R. Civ. P. 56(a).  As noted above, prisoners exhaust administrative remedies "only when filed as a grievance through all three steps of the grievance process in compliance with this policy." MDOC PD 03.02.130 ¶ B.  Defendants provided an affidavit and a supporting report to illustrate that Plaintiff did, in fact, file the foregoing three grievances "through Step III . . . [.]"  (DE 22-3 at 2-4); however, Defendants maintain that Plaintiff did not name Defendant Washington "in any of the grievance reports[.]" In other words, Defendants contend that Plaintiff "did not identify . . . Washington in connection with the conduct alleged in this Complaint in any of the grievance reports on file."  (DE 22 at 13.)  As outlined above, this appears to be accurate.

Plaintiff's response does not adequately challenge this position.  He does not claim there were grievances other than the three attached to Defendants' motion for summary judgment.  Likewise, he does not argue that Grievance Identifier MRF-15-08-1466-28e (which was listed on his Step III grievance report, would have been initiated in August 2015, was apparently received at Step III on November 5, 2015, but was allegedly returned to Crawford for Step I and Step II documents), constitutes exhaustion of his claims against Washington.  (*See* DE 22-3 at 4.)

Moreover, a request for administrative remedies available at the MDOC must specify "[d]ates, times, places, and names of all those involved in the issue being grieved…."  MDOC PD 03.02.130 ¶ R (effective July, 9, 2007).  While some courts have found that a generalized referral to "health care services," in combination with specific recitations of the date(s) and other identifying information, such as reference to specific kites, may be sufficient to identify the target(s) of the grievance for purposes of exhaustion, even if those individual defendants are not named in the grievance, *see, e.g., Burton v. Kakani*, No. 09-10893, 2009 WL 3101046, at *2-3 (E.D. Mich. Sept. 23, 2009), others have found that a broad reference to "health care staff," without more specific allegations in the grievance regarding the defendants, is insufficient is exhaust administrative remedies as to particular defendants, *see, e.g., Solomon v. Michigan Dept. of*

12

*Corrections*, No. 2:10-CV-59, 2011 WL 4479300, at *3 (W.D. Mich. Aug. 31, 2011), *report and recommendation adopted* by 2011 WL 4479407 (W.D. Mich. Sept. 27, 2011).  Here there is no suggestion that the then-MDOC Director, Defendant Washington's predecessor (*see infra.* at fn. 7), whose identity was well known or readily ascertainable to all MDOC prisoners (*see* DE 22-4), was specifically named or had any reason to be on notice of Plaintiff's claim against her.  She was not given "an opportunity to correct [her] own mistakes with respect to the programs [she] administers before [being] haled into federal court." *Woodford*, 548 U.S. at 89.  Moreover, if he had named Defendant Washington in one of the three grievances mentioned in Defendants' motion (or in the apparently unexhausted Grievance Identifier MRF-15-08-1466-28e), Plaintiff's time to point that out was in response to the instant motion.  He did not, only insisting that "he has exhausted all of the state administrative remedies in accordance to state policy." (DE 24 at 1 ¶ 2.).[2]

    The Undersigned recognizes that, "inmates are not required to specially plead or demonstrate exhaustion in their complaints." *Jones*, 549 U.S. at 216.  Instead, failure to exhaust administrative remedies is an affirmative defense under the PLRA.  As such, Defendants bear the burden of proof on exhaustion. *Surles v.*

---

[2] The Court is somewhat perplexed by Plaintiff's response to the extent it seeks grievances.  Plaintiff would have received copies of the grievances attached to Defendants' motion when he was served with a copy of same. (*See* DE 22 at 16.)

*Andison*, 678 F.3d 452, 456 (6th Cir. 2012).  Here, Defendants MDOC and

Washington have met this burden, and Plaintiff has not adequately rebutted same.

There being "no genuine dispute as to any material fact . . . [,]" on the issue of

exhaustion as to his claims against Defendant Washington, which in this lawsuit

concern his cirrhosis of the liver and/or Hepatitis C, this Defendant "is entitled to

judgment as a matter of law."  Fed. R. Civ. P. 56(a).

### b.  Fed. R. Civ. P. 12(b)(6)

When deciding a motion to dismiss under Federal Rule of Civil Procedure

12(b)(6), the Court must "construe the complaint in the light most favorable to

plaintiff and accept all allegations as true."  *Keys v. Humana, Inc.*, 684 F.3d 605,

608 (6th Cir. 2012).  "To survive a motion to dismiss, a complaint must contain

sufficient factual matter, accepted as true, to state a claim to relief that is plausible

on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation

omitted); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)

(concluding that a plausible claim need not contain "detailed factual allegations,"

but it must contain more than "labels and conclusions" or "a formulaic recitation of

the elements of a cause of action").   Facial plausibility is established "when the

plaintiff pleads factual content that allows the court to draw the reasonable

inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S.

at 678.  "The plausibility of an inference depends on a host of considerations,

including common sense and the strength of competing explanations for the defendant's conduct." *16630 Southfield Ltd., P'Ship v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 503 (6th Cir. 2013).

Furthermore, the Court holds *pro se* complaints to "less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972). However, even in pleadings drafted by *pro se* parties, "'courts should not have to guess at the nature of the claim asserted.'" *Frengler v. Gen. Motors*, 482 F. App'x 975, 976-77 (6th Cir. 2012) (quoting *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989)). Furthermore, "courts may not rewrite a complaint to include claims that were never presented . . . nor may courts construct the Plaintiff's legal arguments for him. Neither may the Court 'conjure up unpled allegations[.]'" *Rogers v. Detroit Police Dept.*, 595 F.Supp.2d 757, 766 (E.D. Mich. 2009) (Ludington, J., adopting report and recommendation of Binder, M.J.).

### i.   Eighth Amendment deliberate indifference to a serious medical need

Plaintiff claims that Defendants were deliberately indifferent to his serious medical needs, which resulted in "substantial injury" in violation of the Eighth Amendment. (DE 1 at 8.) "The Eighth Amendment's prohibition on cruel and unusual punishment generally provides the basis to assert a § 1983 claim of deliberate indifference to serious medical needs . . . ." *Phillips v. Roane Cty., Tenn.*, 534 F.3d 531, 539 (6th Cir. 2008). "A constitutional claim for deliberate

indifference to serious medical needs requires a showing of objective and

subjective components." *Phillips*, 534 F.3d at 539; *see also Santiago v. Ringle*,

734 F.3d 585, 590 (6th Cir. 2013) (citing *Comstock v. McCrary,* 273 F.3d 693, 702

(6th Cir.2001)).  As the Supreme Court has instructed in *Farmer v. Brennan*, 511

U.S. 825 (1994):

> It is not, however, every injury suffered by one prisoner at the hands of another that translates into constitutional liability for prison officials responsible for the victim's safety.  Our cases have held that a prison official violates the Eighth Amendment only when two requirements are met.  *First*, the deprivation alleged must be, objectively, "sufficiently serious," . . . ; a prison official's act or omission must result in the denial of "the minimal civilized measure of life's necessities," . . . .  For a claim (like the one here) based on a failure to prevent harm, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm.  . . .
>
> The *second* requirement follows from the principle that "only the unnecessary and wanton infliction of pain implicates the Eighth Amendment." . . . To violate the Cruel and Unusual Punishments Clause, a prison official must have a "sufficiently culpable state of mind."  . . . In prison-conditions cases that state of mind is one of "deliberate indifference" to inmate health or safety, . . . a standard the parties agree governs the claim in this case.

*Farmer*, 511 U.S. at 834 (internal footnote and internal citations omitted).  The

Court then went on to set forth the test for deliberate indifference:

> . . . a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and *disregards* an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. . . . But an official's failure to alleviate a significant risk that he *should have perceived but*

> *did not*, while no cause for commendation, cannot under our cases be
> condemned as the infliction of punishment.

*Farmer*, 511 U.S. at 837–838 (emphasis added).  "[S]ubjective recklessness as

used in the criminal law is a familiar and workable standard that is consistent with

the Cruel and Unusual Punishments Clause as interpreted in our cases, and we

adopt it as the test for 'deliberate indifference' under the Eighth Amendment."  *Id.*

at 839–840.

Here, the Court assumes, for purposes of this motion only, that Plaintiff's

cirrhosis of the liver / Hepatitis C Virus constitutes a serious medical need.  Thus,

the specific issue before the Court is whether Plaintiff's claim against Defendant

Washington alleges the second or subjective prong of an Eighth Amendment

deliberate indifference claim, *i.e.*, that Defendant Washington was *deliberately*

*indifferent* to Plaintiff's serious medical need.

> ii.    **Plaintiff's Eighth Amendment claim against**
> **Defendant Washington does not adequately**
> **allege deliberate indifference.**

Plaintiff's particular allegations against Defendant Washington are based on

her role as Director of the MDOC, pointing out that "the director shall have full

power and authority to supervise and control the affairs of the department . . . ."

Mich. Comp. Laws Ann. § 791.203.[3]  Plaintiff claims that, "[i]n the construction

---

[3] *See* www.michigan.gov/corrections, "About Us," "Meet the Director."  (*See also*
DE 22-4.)

and implementation of policy, procedure and protocol," Defendant Washington is

"the penultimate authority . . . ."  (DE 1 at 10.)  According to Plaintiff, Washington

"contracted QCCM to provide medical services to the MDOC[,]" and "is the

quintessential embodiment of policy, procedure and protocol."  (DE 1 at 10-11.)

Plaintiff seems to argue that:  (i) Washington's policy caused him "to suffer

unnecessary and irreversible damage to his health . . . [,]" and (ii) her choice "to

follow a course of inaction from among various alternatives," resulted in

"indifferen[ce] to the rights of HCV patients in the MDOC."  (DE 1 at 11.)

Defendants argue that Plaintiff's allegations against Defendant Washington

"do not support a legally cognizable claim under 42 U.S.C. § 1983."  (DE 22 at 13-

15.)  The Court should agree.  A recently opinion from this district provides

succinct direction:

> "At a minimum, a § 1983 plaintiff must show that a supervisory
> official at least implicitly authorized, approved or knowingly
> acquiesced in the unconstitutional conduct of the offending
> subordinate."  *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984),
> *cert denied*, 469 U.S. 845 (1984); *see also Taylor v. Michigan Dep't of
> Corr.*, 69 F.3d 76, 81 (6th Cir. 1995).  Furthermore, liability under §
> 1983 will not be imposed solely upon the basis of respondeat superior.
> "There must be a showing that the supervisor encouraged the specific
> incident of misconduct or in some other way directly participated in
> it."  *Knott v. Sullivan*, 418 F.3d 561, 574 (6th Cir. 2005) (*citing
> Bellamy*, 729 F.2d at 421).  Finally, "[l]iability under § 1983 must be
> based on active unconstitutional behavior and cannot be based upon a
> mere failure to act."  *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir.
> 1999) (internal quotations omitted).

*El v. Makowski*, No. 14-11927, 2016 WL 4926168, at *2 (E.D. Mich. Sept. 16,

2016) (Tarnow, J.) (slip copy).  In other words, "a failure of a supervisory official

to supervise, control, or train the offending individual officers is not actionable

absent a showing that the official either encouraged the specific incident of

misconduct or in some other way directly participated in it."  *Hays v. Jefferson*

*Cty., Ky.*, 668 F.2d 869, 874 (6th Cir. 1982).  "At a minimum a plaintiff must show

that the official at least implicitly authorized, approved, or knowingly acquiesced

in the unconstitutional conduct of the offending officers."  *Hays*, 668 F.2d at 874.[4]

The Court should find that Plaintiff has not stated an Eighth Amendment

deliberate indifference claim against Defendant Washington "upon which relief

can be granted[.]"  Fed. R. Civ. P. 12(b)(6).  As an initial matter, the Court

acknowledges Plaintiff reliance upon the Court's May 12, 2017 order directing him

to provide additional copies, which stated that, "[u]pon *initial* review, the Court

concludes that the complaint is not frivolous and states at least one cognizable

claim and that service of the complaint, therefore, is appropriate."  (DE 4, DE 24 at

1-2 ¶ 3) (emphasis added).  However, such orders are issued following "*an initial*

*review* of the complaint pursuant to 28 U.S.C. §1915(e), §1915A and 42 U.S.C. §

1997e(c), to determine whether it is frivolous, malicious, or fails to state a claim

upon which relief can be granted."  (DE 4 (emphasis added).)  This initial, more

---

[4] Plaintiff's own complaint acknowledges this standard for supervisor liability.
(*See* DE 1 at 10.)

cursory review was conducted before the Court granted Plaintiff's application to proceed *in forma pauperis* and ordered the U.S. Marshal to serve the appropriate papers on Defendants without prepayment of the costs for doing so.  (DEs 6, 7.) By comparison, consideration of the instant Rule 12(b)(6) motion – which examines whether Plaintiff has stated an Eighth Amendment deliberate indifference claim against Defendant Washington - occurs with the benefit of argument from both sides and has resulted in a more detailed analysis.

Having reviewed Plaintiff's complaint, as well as the motion papers, I conclude that Plaintiff's pleading fails to allege Defendant Washington's personal involvement in the diagnosis and/or treatment of his cirrhosis of the liver / Hepatitis C from 2005 through May 2016.  As Defendants observe, Plaintiff's claim against Defendant Washington is based upon her role as MDOC Director, and the complaint does not reference a specific policy, such as any of the policy directives concerning healthcare (MDOC PD 03.04.100 through 03.04.125).  (DE 22 at 14, DE 1 at 6-11.)[5]  Moreover, even if the complaint specified a policy, and even if Defendant Washington is a "decision maker" or "policy maker," falling within the general purview of Plaintiff's vague reference to "the policymakers," the complaint does not allege that Defendant Washington had a hand in the policy

---

[5] Defendant Washington was appointed MDOC Director in May 2015.  (DE 22-4.) Thus, *many* of the factual allegations underlying Plaintiff's complaint took place before Defendant Washington became the MDOC Director.  (*See* DE 22 at 14.)

that was the "moving force" behind the alleged deliberate indifference. (DE 1 at

10-11.) As such, although he apparently believes he will prove so, Plaintiff has not

alleged that *Defendant Washington* "made a 'deliberate choice to follow a course

of inaction from among various alternatives,'" and was "correspondingly

indifferent to the rights of HCV patients in the MDOC." (DE 1 at 11).[6]

Furthermore, as to the issue of personal involvement, Plaintiff's response

cites decisions that are not binding on this Court. (DE 24 at 4.)[7] Thus, his

suggestion that Defendant Washington "indirectly participated" by "setting in

motion a series of events," *id*., is not convincing, and a theory of "indirect

---

[6] In fact, the cases Plaintiff cites concern *municipal liability*. (DE 1 at 11.) *See
Heyerman v. Cty. of Calhoun*, 680 F.3d 642, 648 (6th Cir. 2012) ("Municipal
liability only attaches where a custom, policy, or practice attributable to the
municipality was the 'moving force' behind the violation of the plaintiff's
constitutional rights.") (quoting *Miller v. Sanilac Cnty.,* 606 F.3d 240, 254–55 (6th
Cir.2010)); *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483, 106 S. Ct. 1292,
1300, 89 L. Ed. 2d 452 (1986) ("municipal liability under § 1983 attaches where—
and only where—a deliberate choice to follow a course of action is made from
among various alternatives by the official or officials responsible for establishing
final policy with respect to the subject matter in question.").

[7] *See Amaker v. Hakes*, 919 F. Supp. 127, 131 (W.D.N.Y. 1996) ("under Second
Circuit caselaw, supervisory liability may be found where the prison official
learned of the alleged misconduct through the facility's appeals process and 'failed
to remedy the wrong.'") (quoting *Williams v. Smith, supra,* 781 F.2d 319, 323 (2d
Cir. 1986)); *Conner v. Reinhard*, 847 F.2d 384, 397 (7th Cir. 1988) ("The requisite
causal connection is satisfied if the defendant set in motion a series of events that
the defendant knew or should reasonably have known would cause others to
deprive the plaintiff of her constitutional rights.") (citing cases); *Bruner v. Baker*,
506 F.3d 1021, 1026 (10th Cir. 2007) (same).

participation" would not seem to satisfy the Sixth Circuit's directive that Defendant "either encouraged the specific incident of misconduct or in some other way *directly participated* in it." *Hays*, 668 F.2d at 874 (emphasis added).

In sum, as to Defendant Washington, Plaintiff has not adequately alleged the second or subjective prong of an Eighth Amendment deliberate indifference claim, *i.e.*, that Defendant Washington was *deliberately indifferent* to Plaintiff's cirrhosis of the liver / Hepatitis C.   Plaintiff having failed to state a 42 U.S.C. § 1983 claim of Eighth Amendment deliberate indifference against Defendant Washington "upon which relief can be granted[,]" Fed. R. Civ. P. 12(b)(6), she is entitled to dismissal.

### 4.    Fed. R. Civ. P. 56(d)

To be sure, within his response to the pending dispositive motion, Plaintiff contends that he needs both a discovery order from this Court and the appointment of counsel "before he can actually make an affirmed [sic] decision as to whether to amend his complaint."  In addition, he seeks copies of his medical records and Step III grievances, seemingly supplied to defense counsel by Melody A.P. Wallace, presumably the MDOC's Litigation Section Manager.[8]  Furthermore, Plaintiff seeks "45 days from October 2, 2017 to file both future motions," namely a motion for discovery and a motion for appointment of counsel.  (*See* DE 24 at 5.)

---

[8] *See* http://www.michigan.gov/documents/Corrections_121920_7.pdf.

The Court may rule upon the instant motion, even in the presence of Plaintiff's "discovery" statements.  First, a motion to dismiss for "failure to state a claim upon which relief can be granted[,]" Fed. R. Civ. P. 12(b)(6), is ordinarily decided from the face of the pleadings.  *See, e.g., Farmer v. Taco Bell Corp.*, 242 B.R. 435, 436 (W.D. Tenn. 1999) ("a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) may not incorporate materials outside of the record but must instead rely strictly on the pleadings . . . [.]").  Accordingly, the foregoing recommendations that the MDOC is entitled to Eleventh Amendment immunity and that Plaintiff has not adequately alleged Washington's personal involvement – each of which equates to Plaintiff having failed "to state a claim upon which relief can be granted[,]" Fed. R. Civ. P. 12(b)(6) – were made based on the face of Plaintiff's complaint or, in confirming Defendant Washington's title, based upon the public record.  *Hebshi v. United States*, 12 F. Supp. 3d 1036, 1043 (E.D. Mich. 2014) ("In ruling on a motion to dismiss, the Court may consider the complaint as well as (1) documents that are referenced in the plaintiff's complaint or that are central to plaintiff's claims, (2) matters of which a court may take judicial notice, and (3) documents that are a matter of public record.").  Stated otherwise, while Defendants MDOC and Washington attached several exhibits to their motion, and

while Plaintiff may be requesting discovery at this point, the Court need not look beyond Plaintiff's *pleading* to determine if it satisfies Rule 12(b)(6).[9]

Second, Plaintiff has not properly asserted that facts are unavailable to him. "If a nonmovant shows *by affidavit or declaration that, for specified reasons*, it cannot present facts essential to justify its opposition, the court may:  (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order."  Fed. R. Civ. P. 56(d) (emphasis added).  Plaintiff's September 29, 2017 response is not verified or signed under penalty of perjury.  (DE 24 at 6.)  Although he claims to need discovery, such as medical records or grievances, he does not specify why he cannot adequately respond to Defendants' exhaustion argument, with its grievances as attached.  (*See* DE 24 at 1 ¶ 2, DE 24 at 5.)  Nor does the Court see, in the absence of such an explanation, how additional discovery on these issues could change the outcome on the question of whether Plaintiff exhausted his

---

[9] Where the Court relied upon matters outside of the pleadings or considered public records, it did so only within its consideration of whether Plaintiff exhausted his available administrative remedies as to his claims against Defendant Washington. Such arguments are appropriately addressed by a Fed. R. Civ. P. 56 motion for summary judgment.  *Risher v. Lappin*, 639 F.3d 236, 240 (6th Cir. 2011) ("Summary judgment is appropriate only if defendants establish the absence of a 'genuine dispute as to any material fact' regarding non-exhaustion.") (quoting Fed. R. Civ. P. 56(a)).  That Defendants were seeking summary judgment in Defendant Washington's favor based on failure to exhaust under Rule 56 was manifest from the heading of their argument and the title of their motion.  (See DE 22 at 1, 10.) Thus, it was clear from the outset that the Court would be reviewing the administrative record on this issue.

administrative remedies, which is based here upon an essentially static record.

Therefore, the Court should not treat Plaintiff's September 29, 2017 discovery

statements as invoking the procedure set forth in Rule 56(d).

### E.    Conclusion

Defendant MDOC is entitled to dismissal based upon Eleventh Amendment

immunity.  Defendant Washington is entitled to dismissal because Plaintiff has not

exhausted his administrative remedies as to his claims against her; nor has Plaintiff

adequately alleged Defendant Washington's personal involvement in the Eighth

Amendment deliberate indifference claim that forms the basis of the complaint.  As

such, Defendants MDOC and Washington's dispositive motion should be granted.

## III.    PROCEDURE ON OBJECTIONS

The parties to this action may object to and seek review of this Report and

Recommendation, but are required to file any objections within 14 days of service,

as provided for in Fed. R. Civ. P. 72(b)(2) and E.D. Mich. LR 72.1(d).  Failure to

file specific objections constitutes a waiver of any further right of appeal.  *Thomas*

*v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d

505 (6th Cir. 1991).  Filing objections that raise some issues but fail to raise others

with specificity will not preserve all the objections a party might have to this

Report and Recommendation.  *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d

390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d

1370, 1273 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections

must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No.

2," *etc.*  Any objection must recite precisely the provision of this Report and

Recommendation to which it pertains.  Not later than 14 days after service of an

objection, the opposing party may file a concise response proportionate to the

objections in length and complexity.  Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR

72.1(d).  The response must specifically address each issue raised in the objections,

in the same order, and labeled as "Response to Objection No. 1," "Response to

Objection No. 2," *etc.*  If the Court determines that any objections are without

merit, it may rule without awaiting the response.


Dated:  November 7, 2017          s/Anthony P. Patti
                                  Anthony P. Patti
                                  UNITED STATES MAGISTRATE JUDGE


## Certificate of Service

I hereby certify that a copy of the foregoing document was sent to parties of record
on November 7, 2017, electronically and/or by U.S. Mail.

                                  s/Michael Williams
                                  Case Manager for the
                                  Honorable Anthony P. Patti